UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JERRON LAMAR BRANCH,

        Plaintiff,                 Case No. 2:12-cv-16

v.                                        Honorable Gordon J. Quist

CATHERINE BAUMAN, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Jerron Lamar Branch, a prisoner confined at the Alger Maximum Correctional Facility (LMF), filed this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff names Warden Catherine Bauman, Sergeant Unknown Brighton, and Corrections Officer Unknown Rath as Defendants in this case.

In Plaintiff's complaint, he alleges that on December 15, 2010, while in the segregation unit, Defendant Rath called him a "watermelon monkey," which resulted in a verbal altercation. Later that afternoon, Plaintiff was removed from his cell for a routine shower. When Plaintiff returned, he discovered that his mattress had been removed. When Plaintiff asked Defendant Rath why he had taken the mattress, Defendant Rath stated, "Running your mouth, write a grievance." At 6:54 p.m., Defendant Brighton came to Plaintiff's cell front to review a misconduct report written by Defendant Rath, which alleged that Plaintiff had pulled the lining from his mattress. Plaintiff states that a reviewing sergeant may dismiss a misconduct report where it has been issued

inappropriately, so he explained the situation to Defendant Brighton and asserted that the misconduct was retaliatory. Plaintiff also informed Defendant Brighton that the mattress was in the same condition that it had been in when he received it, and that this could be verified by checking the unit cell inspection log. Defendant Brighton refused to verify this information and told Plaintiff to "Deal with it."

Plaintiff then filed a grievance regarding the deprivation of a mattress, which was rejected by Defendant Bauman at step II. On December 20, 2010, Plaintiff wrote to Defendant Bauman and Assistant Deputy Warden Lyle Rutter, complaining of the lack of a mattress, to no avail. Plaintiff was forced to sleep on the concrete floor for seven days, until his hearing on the misconduct report. On December 22, 2010, Plaintiff was found not guilty of the misconduct and his mattress was returned to him. Plaintiff states that he filed several health care requests between December 22, 2010, and January 24, 2010, complaining of back pain as a result of sleeping without a mattress.

Plaintiff states that Defendants' conduct violated his constitutional rights. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

The court dismissed Plaintiff's claims against Defendant Bauman on June 8, 2012 (docket #6 and #7). Presently before the Court is the Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56 (docket #15). Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for

trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants claim that they are entitled to summary judgment on Plaintiff's retaliation claim. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In support of the motion for summary judgment, Defendant Rath denies calling Plaintiff a "watermelon monkey." In addition, Defendant Rath attests:

> On December 15, 2010, showers were being conducted in the segregation unit. During prisoner showers, I regularly conduct cell searches as this is the only time that the prisoner is out of his cell for an extended time. On that date, I removed a mattress from Plaintiff's cell because the mattress was altered and I found a "fish line" that had been pulled from Plaintiff's mattress. The mattress also had large holes in it. I wrote Plaintiff a misconduct ticket for destruction or misuse of property and I wrote a Restriction of Segregation Property and Privileges for removal of Plaintiff's mattress. Plaintiff was provided with a mattress substitute at all times during the restriction, as noted in the Restriction of Segregation Property and Privileges report. I always write this misconduct for inmates that have pulled fish lines out of their mattress because the holes in the mattress created by pulling the line could allow the prisoner to store contraband and allow prisoners to pass unauthorized messages between cells with the line that is pulled from the mattress.

*See* Defendants' Exhibit F, ¶ 4.

Defendants also offer the Restriction of Segregation Property and Privileges report, dated December 16, 2010, which states, "Ensure adequate substitution is provided." *See* Defendants' Exhibit E. The report also gives the following rationale for the restriction:

> While conducting a cell shakedown of Branch 524253 cell B-107 I found a fish line that had been pulled from his mattress. His mattress also had large holes in it. Contraband could be stored in the mattress creating security concerns. Misconduct written.

*Id.*

Also offered in support of the motion for summary judgment is the affidavit of Resident Unit Manager Tammy Lindemuth, who was employed at the Alger Correctional Facility (LMF) during the pertinent time period. In her affidavit, she attests that LMF policy requires a thorough cleaning and sanitizing of each prisoner cell before a new prisoner is assigned to the cell. In addition, Corrections Officers are responsible for completing a cell inspection checklist when a

prisoner moves into a cell in order to ensure that an area is free from contraband and is clean and secure. Lindemuth attests that, because of this policy, is improbable that a string from a mattress would be left in the cell unnoticed by staff prior to Plaintiff's assignment to that cell. *See* Defendants' Exhibit G, ¶¶ 5-7.

As noted above, Plaintiff claims that Defendant Rath wrote the misconduct ticket on him because he had engaged in a "verbal altercation" with Defendant Rath. The undersigned is unaware of any law stating that prisoners have a constitutional right to engage in "verbal altercations" with prison guards. Therefore, Plaintiff has failed to meet the first prong of the test set forth in *Thaddeus-X*.

Defendants also assert that Plaintiff cannot show that an adverse action was taken against him that would deter a person of ordinary firmness from engaging in protected conduct. Defendants note that the misconduct ticket was written for destruction of property for a mattress. *See* Defendants' Exhibit A. Pursuant to MDOC Policy Directive 03.03.105, Attachment B, Code 427, destruction or misuse of property is a class II misconduct. Pursuant to Attachment D of the Policy Directive, such a misconduct is punishable by no more than a loss of privileges sanction. *See* Defendants' Exhibit B. Defendants assert that the temporary loss of privileges is not sufficiently adverse to deter a person of ordinary firmness from engaging in protected conduct.

However, as noted above, Plaintiff was found "not guilty" of the misconduct ticket. The adverse action he is complaining about is the loss of his mattress for seven days. In addition, Plaintiff states that he sought medical attention for back pain suffered as a result of having to sleep without his mattress by filing several health care requests between December 22, 2010, and January 24, 2010. In response to Plaintiff's assertion, Defendant Rath attests that Plaintiff was provided with a mattress substitute at all times during the restriction and attaches a copy of the

Restriction of Segregation Property and Privileges report as evidence to that effect. Defendants' Exhibits F, ¶ 4 and Exhibit E. The undersigned concludes that the requirement that Plaintiff sleep on a mattress substitute for a period of seven days while he awaits a hearing is not sufficiently adverse to deter a person of ordinary firmness from engaging in protected conduct.

With regard to the causation element of *Thaddeus-X*, Defendant Rath denies calling Plaintiff a "watermelon monkey." Defendants' Exhibit F, ¶ 3. Defendants also contend that the misconduct ticket was written by Defendant Rath because the mattress had been altered and Defendant Rath found a "fish line" that had been pulled from Plaintiff's mattress. As noted by Defendants, the fact that prison staff had noticed that the mattress was damaged before Plaintiff occupied that particular cell does not mean that Plaintiff did not pull a "fish line" from the damaged mattress. Defendant Rath attests that he always writes misconduct tickets for the destruction or misuse of property when he finds fish lines pulled out of inmate mattresses. Defendants' Exhibit F, ¶ 4. Defendant Rath would have written that particular misconduct on any prisoner that he found to have pulled a fish line out of a mattress. *Id.* ¶ 5. The undersigned concludes that the causation element of the test set forth in *Thaddeus-X* is not satisfied in this case. Therefore, Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

Defendants also state that Plaintiff has failed to establish that Defendant Brighton was personally involved in the underlying misconduct. As noted above, Plaintiff claims that Defendant Brighton refused to investigate the misconduct ticket after Plaintiff complained, and that he let the misconduct go to a hearing. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S.

at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims

cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendant Brighton was personally involved in the activity which forms the basis of his claim. Defendant Brighton's only role in this action involves the failure to act. Defendant Brighton cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendant Brighton are properly dismissed for lack of personal involvement.

Finally, Defendants assert that they are entitled to summary judgment on Plaintiff's official capacity claims against them because such claims are barred by the Eleventh Amendment. Any claims against the individually-named Defendants in their official capacities do not state a claim upon which relief can be granted. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished). Moreover, the Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections).[1] The State of Michigan has not consented to civil rights suits in the federal courts. *See Abick v. Michigan*, 803

---

[1] The Sixth Circuit has held that since an official capacity suit for retroactive relief, such as monetary damages, is deemed to be against the State, whose officers are the nominal Defendants, the claim is barred by the Eleventh Amendment. *Doe v. Wigginton*, 21 F.3d 733, 736-737 (6th Cir. 1994).

F.2d 874, 877 (6th Cir. 1986). The Eleventh Amendment therefore bars official-capacity suits for damages against its employees. Therefore, any official capacity claims are properly dismissed.

Defendants also claim Plaintiff's individual capacity claims are barred by qualified immunity because Plaintiff has failed to show a violation of clearly established law. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As noted above, Defendants did not violate Plaintiff's constitutional rights. Accordingly, they are entitled to qualified immunity.

In summary, in the opinion of the undersigned, Defendants are entitled to summary judgment. Accordingly, it is recommended that Defendants' Motion for Dismissal and/or Summary Judgment (Docket #14) be granted and that this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley  
      TIMOTHY P. GREELEY  
      UNITED STATES MAGISTRATE JUDGE

Dated: January 14, 2014